UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

LEE CARR,                                      )
                                               )
                Petitioner,                    )
                                               )
v.                                             )        Nos.  2:09-CR-045
                                               )               2:15-CV-179
UNITED STATES OF AMERICA,                      )
                                               )
                Respondent.                    )

## MEMORANDUM AND ORDER

Lee Carr ("Petitioner") has filed a motion to vacate, set aside, or correct his sentence

pursuant to 28 U.S.C. § 2255, alleging four grounds of ineffective assistance by his trial

attorney. [Doc. 987]. By his first claim for relief, Petitioner alleges that counsel "was

Ineffective for failing to explore the Possibility of a Plea Agreement, Particularly when one

was on the table." *Id.* (capitalization in original). By his second (and related) claim,

Petitioner contends that counsel "was Ineffective for Failing to Notify His Client of the

Prosecutor's Plea Offer." *Id.*

The undersigned referred this matter to United States Magistrate Judge Dennis H.

Inman for an evidentiary hearing on, and consideration of, the following issues pertaining

to the first and second claims raised in Petitioner's motion:

1. Whether the United States made a plea offer to Petitioner?

2. If so, did Petitioner's counsel fail to advise Petitioner of that plea offer?

3. Whether Petitioner's counsel failed to ask the government about the possibility of a plea agreement?

4. And if he did not, would the government have agreed to negotiations in the event counsel had asked?

[Doc. 1086].

Magistrate Judge Inman conducted an evidentiary hearing on June 21, 2018, receiving testimony from: Petitioner; Assistant United States Attorney Wayne Taylor, who was the lead prosecutor in this case; and Petitioner's trial counsel Wayne Stambaugh. The following week, Magistrate Judge Inman issued his Report and Recommendation ("R&R"). Therein, the magistrate judge made the following factual findings regarding the questions referred to him:

1. The United States never made a plea offer to Mr. Stambaugh;

2. Mr. Stambaugh did not fail to pass on to Petitioner any plea offer by the government, since there was no offer;

3. Mr. Stambaugh did not ask the government for a plea offer, but only because Petitioner insisted from the very beginning that he wanted to go to trial, and he never wavered from that determination; and

4. [H]ad Stambaugh asked AUSA Taylor for an offer, that offer would have included a non-negotiable demand that petitioner plead guilty to a violation of 21 U.S.C. § 841(b)(1)(A) as charged in Counts 1, 5 and 12.

[Doc. 1097, p. 3-4]. In light of these findings, Magistrate Judge Inman recommended that the Court deny Petitioner's § 2255 motion as to the first and second grounds for relief.

Petitioner objects to the R&R, and the United States has responded to those objections. [Docs. 1098, 1100]. This matter is now ripe for determination. A transcript of Magistrate Judge Inman's evidentiary hearing has been filed [doc. 1099] and has been

carefully reviewed by the Court. For the reasons that follow, the Court will adopt the Report and Recommendation in full. Petitioner's first and second grounds for relief will be denied.

## I.

### *Background*

The indictment in this case, along with three superseding indictments, charged Petitioner and 14 co-defendants with various drug and drug-related offenses. Petitioner, represented by attorney Stambaugh, went to trial in 2010 along with 6 co-defendants. The jury convicted Petitioner of all but one of the charges against him. The Court sentenced Petitioner to 235 months' imprisonment on each count, to be served concurrently. Petitioner appealed, and the Sixth Circuit affirmed both the sentence and the convictions.[1]

In June 2015, Petitioner filed his § 2255 motion, raising four grounds for relief.[2] This memorandum, like Judge Inman's Report and Recommendation, addresses only the first and second of those grounds.

## II.

### *Authority*

District courts are both statutorily and constitutionally required to conduct a *de novo* review of a magistrate judge's report and recommendation. *See United States v. Shami*, 754 F.2d 670, 672 (6th Cir. 1985). However, it is necessary only to review "those portions

---

[1] Unrelated to the motion now before the Court, Petitioner's total sentence was later reduced to 188 months pursuant to 18 U.S.C. § 3582(c)(2). [Doc. 1071].

[2] Petitioner filed the motion *pro se*. He was, however, represented by appointed counsel at the June 21 evidentiary hearing, and his objection to the R&R is filed by counsel.

of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b). District courts need not provide *de novo* review where objections to a report and recommendation are frivolous, conclusive, or general. *See Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986).

A petitioner alleging ineffective assistance must satisfy the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, the petitioner must establish, by identifying specific acts or omissions, that counsel's performance was deficient and that counsel did not provide "reasonably effective assistance," *id.*, as measured by "prevailing professional norms." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005). Courts must presume that counsel's assistance was effective, and petitioners bear the burden of showing otherwise. *See Mason v. Mitchell*, 320 F.3d 604, 616–17 (6th Cir. 2003).

Second, a petitioner must demonstrate "a reasonable probability that, but for [counsel's acts or omissions], the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691.

III.

*Analysis*

A. Ground Two

The Court begins its discussion with Petitioner's second claim for relief. As noted above, the § 2255 motion alleges that trial counsel "was Ineffective for Failing to Notify His Client of the Prosecutor's Plea Offer." As also noted above, Magistrate Judge Inman

found that no plea offer was ever made by the government, and attorney Stambaugh thus did not provide ineffective assistance by failing to pass along a nonexistent offer.

Petitioner, through counsel, does not object to the magistrate judge's findings and conclusions regarding ground two. Further, Petitioner himself testified that he now understands that there was never a plea offer. [Doc. 1099, p. 15]. The Court accordingly considers this claim abandoned. The Report and Recommendation will be adopted in full as to ground two, and that claim will be denied.

## B. Ground One

Petitioner's first ground for relief alleges that his trial attorney "was Ineffective for failing to explore the Possibility of a Plea Agreement, Particularly when one was on the table." Again, Magistrate Judge Inman found that trial counsel was not ineffective "because [P]etitioner insisted from the very beginning that he wanted to go to trial, and he never wavered from that determination." The magistrate judge concluded,

> It is beyond argument that petitioner insisted that he was not guilty of the conspiracies and that he wanted a trial. Under those circumstances, if Stambaugh on his own volition and without authority from his client has approached AUSA Taylor and asked for an offer, it would have been a futile effort and possibly counter-productive as far as the attorney-client relationship was concerned. . . .

> Petitioner has Buyer's Remorse. Based on the outcome of the trial, he now knows that he would be somewhat better off had he pled guilty, his persistent protestations of innocence notwithstanding. . . . The pertinent circumstance that existed at the time of trial was petitioner's firm insistence that he wanted a trial. Mr. Stambaugh was not ineffective for honoring his client's unequivocal instructions to proceed to trial.

[Doc. 1097, p. 4].

Petitioner, through counsel, frames his objection to the R&R as follows:

[I]t should be noted that the testimony of Mr. Stambaugh and Mr. Carr diverge on the issue of whether they discussed the potential guideline range of entering a potential plea versus being found guilty at trial. Mr. Carr states that he never discussed guideline ranges with his trial attorney. According to his testimony, if he knew the potential for a reduction in his guideline range (i.e., acceptance of responsibility), the possibility of requesting a plea would have entered his mind. Mr. Stambaugh states that he reviewed the guideline range potential with Mr. Carr early on in the representation. The Government stated that it would have made a plea offer to Mr. Carr had one been requested, but that it would have involved pleading to the most serious offense charged and a 10-year mandatory minimum sentence.

However, it is submitted that this issue does not revolve around whether Mr. Carr requested that his trial attorney seek a plea offer. Rather the issue should be framed as to whether defense counsel has an obligation to engage in plea negotiations with the government despite the defendant's insistence on proceeding to trial.

[Doc. 1098, p. 1-2]. In other words, Petitioner objects that defense attorneys are constitutionally required in all circumstances to "explore disposition without trial" and to advise their clients "concerning the ramifications of pleas." *Id.*, p. 4. According to Petitioner, "defense counsel should always seek a resolution without trial for their client, whether the defendant desires to plead or is adamant about going to trial." *Id.* [3]

---

[3] At this point it should be made clear what *is not* now before the Court. In his *pro se* memorandum and his evidentiary hearing testimony, Petitioner contended that his insistence on going to trial was based in part on allegedly bad advice provided by counsel pertaining to offense elements and the strength of the government's proof. However, Petitioner's R&R objection does not mention that theory at all. The issue will therefore receive no analysis in this memorandum. *See* 28 U.S.C. § 636(b)(1) (District judges are required to engage in *de novo* review of only those specific portions of the R&R to which objection is made.)

Further, Petitioner's current framing of the issue is arguably an attempt to amend his § 2255 motion to add an entirely new claim under *Lafler*. *See Lafler v. Cooper*, 566 U.S. 156, 163 (2012) ("In this case all parties agree the performance of respondent's counsel was deficient when he advised respondent to reject the plea offer on the grounds he could not be convicted at trial."). However, Petitioner has not sought—let alone been granted—permission to amend his motion to raise that additional ground.

In any event, as will be discussed below, Petitioner has not met his burden of proving that his insistence of going to trial was in any way caused by attorney Stambaugh's incorrect advice. Instead, that "adamant" decision was Petitioner's and Petitioner's alone.

At the evidentiary hearing, attorney Stambaugh described Petitioner as "a very sophisticated client" who "knew exactly what questions to ask about the guidelines and what questions to ask about his defense," and who "underst[ood] exactly what you're talking about[.]" [Doc. 1099, p. 27-28]. Mr. Stambaugh testified that he met with Petitioner in person "probably close to 10" times, that he spoke with Petitioner by phone "pretty regularly," and that he had substantive email communication with Petitioner on at least a biweekly basis. *Id.* at 25.[4] Mr. Stambaugh described Petitioner as having "a lot of" substantive questions. *Id.*

According to Mr. Stambaugh, Petitioner "always wanted to go to trial from the very beginning." *Id.* at 26. "From the time he was arraigned he wanted to go forward with trial, and he wanted to go forward with trial in every meeting, and every communication we had was regarding either interviewing witnesses or gathering information for trial." *Id.*

Mr. Stambaugh testified that he reviewed "all the evidence" with Petitioner—as he "always" does in each case—and that he reviewed every element of each charged offense. *Id.* at 27. According to his testimony, Mr. Stambaugh explained to Petitioner that there were cooperating co-defendants who could affect the trial outcome. *Id.* at 29-30. Mr. Stambaugh denied telling Petitioner that the evidence was insufficient to convict, or that proceeding to trial was the only option. *Id.* at 30. The lawyer testified that he reviewed the possible outcomes of going to trial, as he "always do[es] with a client that's going to

---

[4] Conversely, Petitioner testified that he only met in person with trial counsel twice but that they spoke on phone "throughout the whole process." [Doc. 1099, p. 5]. These differences aside, it is apparent that Petitioner and his attorney were in regular communication from arraignment to trial.

trial, and you give them—I always start off with the worst-case scenario so they understand what a jury can actually do, no matter what they think a jury might actually do." *Id.* at 27. Mr. Stambaugh testified that these discussions included Petitioner's potential sentencing guideline exposure, which were covered "in great detail." *Id.*

Mr. Stambaugh "believes" that he had one conversation with Petitioner regarding the possibility of pleading to the indictment without the benefit of a plea agreement. *Id.* at 34-35. He is confident that he discussed with Petitioner the potential guideline ranges if he pled guilty versus going to trial, but could not recall the depth of that conversation. *Id.* at 35. Mr. Stambaugh explained that "I sometimes find that when you're talking to someone and they're insistent on going to trial, it's just counter-productive to try to force them into a plea agreement." *Id.*

Mr. Stambaugh further testified that this is his only case to have gone to trial without plea negotiations. *Id.* at 38. He explained that Petitioner is "probably the only client I've ever had that's insisted on going to a jury trial from the very beginning. I can't say I've ever had a client that's done that before." *Id.* Mr. Stambaugh never asked the United States to send a formal plea agreement, nor he did not recall Petitioner asking for one. *Id.* at 26, 37. Nonetheless, Mr. Stambaugh testified that he had a "passing" or "offhanded" conversation with the prosecution regarding the possibility of a five-year plea deal, which the United States rejected. *Id.* at 31, 37.

Assistant United States Attorney Taylor testified of a clear recollection that Petitioner "did not have an interest in pleading guilty, did not want a plea agreement and wanted to go to trial." *Id.* at 41. Mr. Taylor further testified that Petitioner was "pretty

vehement" about going to trial, based on attorney Stambaugh's communications that Petitioner was "definitely going to trial, [and] was not interested in a plea agreement at all." *Id.* at 41-42. Mr. Taylor agreed that it was "certainly possible" that Mr. Stambaugh mentioned the possibility of a five-year plea deal, which the prosecution would have rejected outright. *Id.* at 43. Mr. Taylor's recollection on this point was not absolutely clear due to the passage of time. *Id.*

Petitioner directly testified, "When I was arrested and arraigned, . . . I thought that I wasn't guilty and I wanted to go to trial. . . . I did maintain that stance" through trial. *Id.* at 4. Petitioner acknowledged, "I was adamant [to Mr. Stambaugh] that I wanted to go to trial[.]" *Id.* at 10. Petitioner testified that he never asked his attorney to engage in plea negotiations because "I thought I was innocent of the charges that were being brought against me[.]" *Id.* at 5. Petitioner does not recall discussing with attorney Stambaugh the option of pleading guilty, nor does he recall ever discussing the different potential sentencing guideline exposures were he to plead rather than go to trial. *Id.* at 6, 9. Petitioner acknowledged that "[c]ertain things I can recall and know for fact and others it's kind of -- . . . I don't recall if he [Stambaugh] did or didn't" discuss certain issues with him. *Id.* at 16-17. Additionally, Petitioner does not recall the contents of his own September 2015 affidavit. *Id.* at 17-18.[5]

---

[5] As should by now be apparent, the memory of all three witnesses at the June 2018 hearing was less than perfect. That is understandable. Petitioner was indicted in May 2009, made his initial appearance in March 2010, and went to trial on November 30, 2010.

Petitioner claims that attorney Stambaugh's performance was so deficient that Petitioner was not even informed prior to trial that several codefendants had pled guilty. *Id.* at 20-21. Petitioner admits that he saw his Presentence Investigation Report prior to sentencing but does not recall knowing what his guideline range was. *Id.* at 6. Petitioner claims that attorney Stambaugh did not discuss the guideline range with him prior to sentencing. *Id.* at 6-7.[6]

Petitioner's "adamant" proclamations of innocence continued after trial. In a June 2011 letter to the Court, Petitioner wrote, "I know in my heart that I am innocent of these charges[.]" [Doc. 765, p. 2]. At sentencing, Petitioner told the Court, "I truly felt that I would be vindicated because I am again innocent of these charges." [Doc. 882, p. 17]. Post-sentencing, Petitioner again wrote to the Court, continuing to maintain that he "should not [have] been convicted of conspiracy on any level." [Doc. 805, p. 2]. In 2012, Petitioner wrote to the Court seeking transcripts that would "prove my innocence." [Doc. 891, p. 1].[7]

The testimony of attorneys Taylor and Stambaugh is believed, and Petitioner's testimony is not. The lawyers were consistent with one another in their testimony, and that testimony is consistent with a record that shows Petitioner was "adamant" about going to

---

[6] The Court finds these statements particularly incredible. At the sentencing hearing, Mr. Stambaugh affirmed that he had gone over the Presentence Investigation Report with Petitioner. Counsel then orally argued issues pertaining to offense level and criminal history points that "my client would advocate," that "my client has pointed out to me again," that his client "believe[d]," and that "my client wanted to bring to the Court's attention." [Doc. 882, p. 2-5]. If Mr. Stambaugh was misstating the record, Petitioner could have spoken up at that time or during his lengthy allocution.

[7] As an aside, Petitioner Carr's continuing protestations of innocence are curious in light of the admission in his *pro se* memorandum that "Carr was one of the most culpable defendants and hence [the government's] primary target." [Doc. 988, p. 7].

trial because he claimed to be innocent. Further, attorney Stambaugh has practiced before this Court for many years. The Court is familiar with the quality of his work, and the level of representation testified to by Mr. Stambaugh in this case is consistent with what this Court typically sees from that attorney.

Petitioner's testimony is not credited. It is again noted that Petitioner could not recall the specifics of his 2015 affidavit, calling into question his ability to remember particulars happening in 2009 and 2010. By his own admission, Petitioner cannot recall what Mr. Stambaugh did and did not discuss with him. Lastly, as observed above, Petitioner's testimony regarding the caliber of Mr. Stambaugh's sentencing phase representation was plainly inaccurate if not false. Those inaccuracies severely diminish the credibility of his remaining testimony.

The Court accordingly finds that Mr. Stambaugh, on at least one occasion, counseled Petitioner regarding the possibility of pleading guilty. The court further finds that Mr. Stambaugh informally reached out to the prosecution to see if a plea offer would be available that might be agreeable to his client. Mr. Stambaugh did not make further efforts solely because his client "adamantly" insisted on going to trial. The Court agrees with Magistrate Judge Inman, attorney Stambaugh, and the United States that continuing to counsel Petitioner regarding a guilty plea would have, in these circumstances, risked fracturing the attorney-client relationship.

"Adequate representation by a criminal defense attorney entails exploring possible plea negotiations and deals." *Newman v. Vasbinder*, 259 F. App'x 851, 854 (6th Cir. 2008). "There is a recognized duty for defense counsel to explore a plea deal in some situations."

*Vicente-Sapon v. United States*, Nos. 1:12-cr-106, 1:15-cv-187, 2018 WL 2943446, at * 5 (E.D. Tenn. June 12, 2018).  Attorney Stambaugh fulfilled that duty in this case, to the extent that Petitioner and the circumstances of the attorney-client relationship would allow.

This is not a case like, for example, *White v. United States*, Nos. 2:10-CV-070, 2:05-CR-174, 2014 WL 12823455 (S.D. Ohio Apr. 30, 2014).  In *White*, the attorney was found to have provided ineffective assistance because he "never determined why Petitioner . . . wanted to go to trial and instead simply assumed that Petitioner was not amenable to pleading.  2014 WL 12823455, at *4.  No plea negotiations were initiated by White's counsel because the attorney "'guessed[]" that he was pretty well certain that Petitioner wanted to go to trial."  *Id.*

Instead, here, as in *Vicente-Sapon*, the Petitioner (whose testimony, like Vicente-Sapon's, is not deemed credible) "by his own admission . . . made the decision to pursue a trial and not negotiate a plea offer."  2018 WL 2943446, at *5-6.  Mr. Stambaugh explored the possibility of a plea to the extent that his "vehement" client would allow.  This Court will not find Mr. Stambaugh ineffective for not continuing to pursue a futile result in contravention of his client's plain instructions.  *See Newman*, 259 F. App'x at 854 ("We will not hold that an attorney rendered constitutionally deficient assistant because she did not seek a plea agreement that she reasonably believed the prosecutor would reject, and that could not be reconciled with her client's version of the facts of the offense.").  Petitioner's first ground for relief will be denied.

IV.

*Conclusion*

After a thorough review of the Report and Recommendation [doc. 1097], the hearing transcript, and the parties' filings, the Court **ACCEPTS** and **ADOPTS** the Report and Recommendation [doc. 1097] in its entirety.  Petitioner's objections [doc. 1098] to the Report and Recommendation are **OVERRRULED**.  Grounds one and two of Petitioner's 28 U.S.C. § 2255 motion [doc. 987] are **DENIED**.

**IT IS SO ORDERED.**

ENTER:

<u>     s/ Leon Jordan     </u>
United States District Judge