UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| LEE CARR, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Nos. 2:09-CR-045 |
| ) | 2:15-CV-179 |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

# **MEMORANDUM AND ORDER**

Lee Carr ("Petitioner") has filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 [doc. 987], alleging four grounds of ineffective assistance of counsel. The first and second of these claims were referred to United States Magistrate Judge Dennis H. Inman for an evidentiary hearing and preparation of a Report and Recommendation. [Doc. 1086]. The Court has adopted Judge Inman's Report and Recommendation by separate memorandum and order entered this date, thereby denying Petitioner's first and second claims.

The Court will now address the remaining claims for relief, identified as grounds three and four. For the reasons discussed herein, the Court will deny Petitioner's motion in its entirety.

I.

*Background*

The original indictment, along with three subsequent superseding indictments, charged 15 defendants with various drug and drug-related offenses. Petitioner was named in the original and each superseding indictment. As germane to his motion to vacate his conviction, the third superseding indictment[1] charged him with: conspiring to distribute and to possess with the intent to distribute five kilograms or more of cocaine (Count 1); conspiring to distribute and to possess with the intent to distribute a quantity of marijuana (Count 3); conspiring to distribute and to possess with the intent to distribute fifty or more grams of cocaine base (Count 5); conspiring to commit money laundering (Count 6); distribution of a quantity of cocaine (Count 8); manufacturing and attempting to manufacture fifty or more grams of cocaine base (Count 12); and aiding and abetting the distribution of five or more grams of cocaine base (Count 15).

Of the fifteen defendants: seven signed plea agreements; one was dismissed upon motion of the government; and seven, including Petitioner, proceeded to trial. Petitioner was found guilty on every count in which he was charged with the exception of Count 3.[2]

Based on Petitioner's Total Offense Level of 36 and a Criminal History Category of III, his sentencing guideline range was 235 to 293 months.[3] The Court sentenced

---

[1] Doc. 398.

[2] Verdict, doc. 635.

[3] Presentence Report, ¶ 81.

Petitioner to the bottom of that range, 235 months on each count, all to be served concurrently.[4]

Petitioner appealed to the Sixth Circuit Court of Appeals. Both his conviction and sentence were affirmed.[5]

This Court later reduced Petitioner's Total Offense Level to 34 pursuant to Amendment 782 to the Sentencing Guidelines, resulting in a guideline range of 188 to 235 months. The Court reduced Petitioner's sentence to the bottom of that re-calculated range, 188 months on each count, all to be served concurrently.[6]

Now before the court are the two remaining counts of Petitioner's § 2255 motion. There, Petitioner claims that his trial attorney was ineffective: "for failing to allow [sic] [Petitioner] his constitutional right to testify in his own behalf" (ground three); and "for failing to investigate" (ground four).

II.

*Standard of Review*

This Court must vacate and set aside a petitioner's sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, . . . ." 28 U.S.C. § 2255. Under Rule 4 of the

---

[4] Judgment, doc. 790.

[5] Opinion, doc. 930.

[6] Order, doc. 1071.

Governing Rules, the Court is to consider initially whether the face of the motion itself, together with the annexed exhibits and prior proceedings in the case, reveal the movant is not entitled to relief. If it plainly appears the movant is not entitled to relief, the court may summarily dismiss the § 2255 motion under Rule 4.

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *Id.* (citations omitted). A motion that merely states general conclusions of law without substantiating its allegations with facts is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959).

To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see also United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying *Brecht* to a § 2255 motion). To warrant relief for a non-constitutional error, a petitioner must show a fundamental defect in the proceeding that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley*, 512 U.S. 339, 354 (1994). In order to obtain collateral relief under § 2255, a petitioner must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152, 166 (1982).

When a § 2255 petitioner claims he was denied his Sixth Amendment right to effective assistance of counsel, the attorney is presumed to have provided effective assistance, and the petitioner bears the burden of showing that the attorney did not. *Mason v. Mitchell*, 320 F.3d 604, 616-17 (6th Cir. 2003). The petitioner must prove that specific acts or omissions by his attorney were deficient and that the attorney failed to provide "reasonably effective assistance," *Strickland v. Washington*, 466 U.S. 668, 687 (1984), which is measured by "prevailing professional norms," *Rompilla v. Beard*, 545 U.S. 374, 380 (2005).

"[T]he constitutional right at issue here is ultimately the right to a fair trial, not to perfect representation." *Smith v. Mitchell*, 348 F.3d 177, 206 (6th Cir. 2003) (citing *Strickland*). If a petitioner crosses this evidentiary hurdle, he must then show "a reasonable probability that, but for [the attorney's acts or omissions], the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694. In other words, he must show that he was actually prejudiced by the attorney's deficient representation.

A court's review of counsel's performance is "highly deferential." *Id*. at 689. The court must judge the reasonableness "as of the time of counsel's conduct." *Id.* at 690. The petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* To establish "prejudice," a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "The likelihood of a different result must be substantial, not just

conceivable." *Harrington v. Richter*, 562 U.S. 86 (2011). "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Strickland*, 466 U.S. at 697.

III.

*Analysis*

A. Ground Three

Petitioner complains that he wanted to testify at trial but was prevented from doing so by his attorney. To be sure, a criminal defendant has a constitutional right to testify on his own behalf if he wishes. *See United States v. Webber*, 208 F.3d 545, 550 (6th Cir. 2000). But that same Constitution gives him the right to not testify, and the perils of a criminal defendant taking the stand are well-known.

At trial, the attorneys for a number of defendants, including Petitioner's attorney, announced to the Court that their clients would not testify. The Court then asked each of these defendants, with the exception of Petitioner, if he understood that he had the right to testify, and if he intended to waive that right. Each defendant so questioned answered in the affirmative.[7] Through sheer inadvertence, the Court failed to specifically question Petitioner as it did his co-defendants. For his part, Petitioner said and did nothing, even after the Court asked generally whether "everyone [was] fully informed" and whether there was "anything else we need to address?"[8]

---

[7] Transcript, doc. 677, p. 2447-48.

[8] Transcript, doc. 677, p. 2448.

6

Petitioner's contention that he sat mute because he knew nothing about the federal judicial system is not believed. He heard his lawyer say that Petitioner did not intend to testify; he heard his co-defendants' lawyers say the same; and he heard the Court tell each of his co-defendants that they had the right to testify if they so desired. To accept Petitioner's claim that he believed his lawyer had the final word on the matter necessarily entails an implicit claim that he believed that for some reason the Court had put him in a different category from that of his co-defendants. Importantly, it is noted that Petitioner's attorney did not say, "My client will not testify." Rather, the attorney said, "And, Your Honor, finally for Mr. Carr, although I didn't make it clear to The Court, Mr. Carr wishes not to testify, and I've advised him of his rights."[9] If his attorney had just lied to the Court, Petitioner easily could have spoken up and made his disagreement known. To repeat, he instead said nothing.

The facts of *Webber* are similar to those before this Court. In *Webber*, defense counsel announced to the court, in Webber's presence, that his client intended to testify. *Webber*, 208 F.3d. at 548. Later, in a sidebar conference out of the defendant's hearing, counsel advised the court that his client would *not* be testifying. *Id*. at 550. The district judge did not ask the defendant if he wanted to testify or if he was aware that his attorney had just waived that right, nor was the defendant asked to comment on the fact that he would not be testifying. *Id.* Like Petitioner, Webber never told the court that he wished to testify, *id.*, but, as Petitioner does here, nonetheless argued on appeal that he was denied that constitutional right. *Id*. at 547.

---

[9] *Id*.

7

The Sixth Circuit noted:

- A defendant's relinquishment of the right to testify must be knowing and intentional;

- Although counsel must advise the defendant as to whether he should testify, *it ultimately is the defendant's decision*;

- When the tactical decision is made that the defendant will not testify*, the defendant's assent is presumed*;

- Barring any statement or action by the defendant which suggests he disagrees with his attorney's decision, or that he wants to testify, the trial court is not required to address a silent defendant and ask if he is waiving his right to testify;

- A defendant who wants to testify contrary to his attorney's representations can communicate with the court or discharge his attorney;

- At the very least, the defendant must alert the court in some fashion that he wants to testify;

- If the defendant fails to so alert the court, "[w]aiver is presumed from the defendant's failure to testify or notify the trial court of the desire to do so."

*Id.* at 551; *Accord Gonzales v. Elo*, 233 F.3d 348, 356-57 (6th Cir. 2000). In this case, Petitioner's silence was a tacit agreement with his attorney's statement that Petitioner was waiving the constitutional right to testify. Petitioner's third claim will therefore be denied.

## B. Ground Four

Lastly, Petitioner claims that his trial counsel was ineffective for "failure to investigate" cocaine residue and a ledger detailing drug transactions, both of which were found in a safe in the apartment of Petitioner's neighbor, Annette Stephens. Petitioner argues that counsel was ineffective in not attempting to show that there was no "nexus"

8

between Petitioner and the ledger and cocaine, since those items were found in Stephens' apartment, not his.[10]

Petitioner's attorney closely cross-examined Agent Templeton at trial concerning the location and discovery of these items, building to counsel's assertion that "there's [no] way you can tie that evidence to Lee Carr in any way[.]"[11] Plainly, counsel *had* investigated this issue. Further, the United States presented a wealth of evidence that Petitioner, who lived in the apartment immediately above Stephens', was observed entering and leaving Stephens' apartment several times.[12] Also, one of Petitioner's co-defendants testified that the handwriting in the ledger was Petitioner's.[13]

Counsel did not provide ineffective assistance by failing to investigate the evidence found in Stephens' apartment, and Petitioner suffered no prejudice. Petitioner's fourth claim will be denied.

## IV.

### *Conclusion*

All claims raised by Petitioner in his § 2255 motion have been addressed, and that motion will be dismissed in its entirety.

Next, the Court must determine whether a certificate of appealability should be issued. A certificate should issue if Petitioner has demonstrated a "substantial showing of

---

[10] Petitioner's memorandum, doc. 988, p.17-18.

[11] Trial transcript, doc. 677, p. 1008-14.

[12] Trial transcript, doc. 677, p. 669-71.

[13] Trial transcript, doc. 677, p. 1366.

9

a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit disapproves of the issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F. 3d 466 (6th Cir. 2001). District courts must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standard set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Id.* Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 529 U.S. at 484.

After reviewing each of Petitioner's claims, the Court finds that reasonable jurists could not conclude that any of Petitioner's claims are adequate to deserve further review. Because Petitioner has failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge